# IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE MIDDLE DISTRICT OF TENNESSEE
### NASHVILLE DIVISION

| | | |
|---|---|---|
| In re: | ) | |
| | ) | Chapter 11, Subchapter V |
| SERENITY HOMES OF TN LLC | ) | Case No: 3:23-bk-01049 |
| | ) | Judge Walker |
| Debtor. | ) | |

## DEBTOR'S CHAPTER 11 PLAN OF REORGANIZATION
### (Subchapter V)

This Plan is for a small business debtor under Subchapter V. Pursuant to the requirements of 11 U.S.C. § 1190, this Plan includes (A) a brief history of the business operations of the debtor; (B) a liquidation analysis; and (C) projections with respect to the ability of the debtor to make payments under the proposed plan of reorganization.

A. <u>Brief History of the Business Operations of the Debtor</u>. Serenity Homes of TN LLC ("<u>Serenity</u>" or "<u>Debtor</u>"), is a real estate related company with a business model centered on acquiring, repairing and selling properties. Depending on the best use of a particular property, it also holds and rents property from time-to-time.

Serenity was formed in Tennessee on August 7, 2019, and has had two (2) members: Eileen Santangelo and David Day. Mr. Day resigned as a member in 2022 (and recently passed away on May 18, 2023).

For the relevant pre-bankruptcy period Serenity owned four (4) properties—three in Portland, Tennessee and one in Franklin, Kentucky. Serenity fell behind on the mortgage payments for the Portland properties and a lender, Easy Street Capital, sought to foreclose on one of the properties. To avoid losing the property to foreclosure, and to preserve the value therein, Serenity elected to file an emergency Chapter 11 case. The Chapter 11 case has provided stability against the foreclosure and a path forward for Serenity to address its overall debt. Serenity now proposes to restructure its financial obligations under Chapter 11 via marketed sales of its properties to satisfy the obligations under this Plan.

B. <u>Liquidation Analysis</u>. To confirm the Plan, the Court must find that all creditors and equity interest holders who do not accept the Plan will receive at least

as much under the Plan as such claim and equity interest holders would receive in a chapter 7 liquidation. A liquidation analysis is attached to the Plan as ***Exhibit A***.

C.　Underline Feasibility Projections. The Plan proponent must also show that it will have enough cash over the life of the Plan to make the required Plan Payments.

i.　The Debtor receives rental income of less than $2,000 per month, which is insufficient to meets its continuing costs of operations. Thus, the projected disposable income (as defined by § 1191(d) of the Code) for the period described in § 1191(c)(2) is less than **$20,000** (over 3 years). As reflected herein, the primary source of Plan funding will be proceeds generated from marketed property sales.

ii.　The final Plan Payment is expected to be paid on or before **December 31, 2026**.

iii.　**You should consult with your accountant or other financial advisor if you have any questions pertaining to these projections**.

## ARTICLE I
### SUMMARY

1.01　This Plan of Reorganization under Chapter 11 of the Code (the "Plan") proposes to pay the creditors the Debtor from assets of the Debtor as set forth herein.

1.02　This Plan provides for:

| | |
|---|---|
| One (1) | class of administrative priority claims; |
| Seven (7) | classes of secured claims; |
| One (1) | class of non-priority unsecured claims; and |
| One (1) | class of equity security holders. |

1.03　Non-priority unsecured creditors holding allowed claims will receive pro rata distributions totaling **$2,100.00** to the class. This Plan also provides for the payment of administrative and priority claims.

1.04　All creditors and equity security holders should refer to Articles III through VII of this Plan for information regarding the precise treatment of its claim.

1.05 **Your rights may be affected. You should read this Plan carefully and discuss it with your attorney, if you have one. If you do not have an attorney, you may wish to consult one**.

## ARTICLE II
### CLASSIFICATION OF CLAIMS AND INTERESTS

2.01 <u>Class 1</u>. This class shall consist of all allowed claims entitled to priority under § 507(a) of the Code (except administrative expense claims under § 507(a)(2), and priority tax claims under § 507(a)(8).

2.02 <u>Class 2</u>. This class shall consist of the claim of PNC Bank, National Association to the extent allowed as a secured claim under § 506 of the Code.

2.03 <u>Class 3</u>. This class shall consist of the claim of First Horizon, Association to the extent allowed as a secured claim under § 506 of the Code.

2.04 <u>Class 4</u>. This class shall consist of the two (2) claims of Easy Street (defined later herein) to the extent allowed as secured claims under § 506 of the Code.

2.05 <u>Class 5</u>. This class shall consist of the claims of the Sumner County Trustee to the extent allowed as a secured claim under § 506 of the Code.

2.06 <u>Class 6</u>. This class shall consist of the claim of William Ira Wood, IV to the extent allowed as a secured claim under § 506 of the Code.

2.07 <u>Class 7</u>. This class shall consist of claims that serve as liens on any of the Debtor's real estate by way of a judgment recorded with the Register of Deeds for Sumner County, Tennessee which is not otherwise a disputed claim hereunder.

2.08 <u>Class 8</u>. This class shall consist of the claim of Wood Motor Company to the extent allowed as a secured claim under § 506 of the Code.

2.09 <u>Class 9</u>. This class shall consist of all unsecured claims allowed under § 502 of the Code that are not entitled to priority and not expressly included in the definition of any other class. This class includes, without limitation, claims arising out of the rejection of any executory contract or unexpired lease, each allowed claim secured by a lien on property in which the Debtor has an interest to the extent that such claim is determined to be unsecured pursuant to 11 U.S.C. § 506(a), or unsecured by way of avoidance pursuant to 11 U.S.C. § 522(f), and each such claim of the class described in 11 U.S.C. § 507(a), to the extent that the allowed amount of such claim exceeds the amount which such claim may be afforded priority thereunder.

    2.10   Class 10. This class shall consist of the interests of the Debtor.

# ARTICLE III
## TREATMENT OF ADMINISTRATIVE EXPENSE CLAIMS, PRIORITY TAX CLAIMS AND, AND COURT FEES

    3.01   Unclassified Claims. Pursuant to § 1123(a)(1), administrative expense claims allowed under §507(a)(2) and priority tax claims under § 507(a)(8) are not in a class.

    3.02   Administrative Claims. Except as otherwise provided under the Plan, each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full on the Effective Date of the Plan, in cash, or upon such other terms as may be agreed upon by the holder of the claim and the Debtor.

    3.02.1 In the alternative to Article 3.02, in the event this Plan is non-consensually confirmed under § 1191(b), each holder of an administrative expense claim allowed under § 503 of the Code will be paid in full through cash disbursement of all available funds that are not specifically dedicated to set monthly payments within this Plan.

    3.03   Priority Domestic Support Obligations. [None].

    3.04   Priority Tax Claims. No claims meeting the requirements of § 507(a)(8) have been identified or filed in this case; however, in the event any such claim is identified or allowed, it will be paid in full via deferred cash payments, with **5.00%** annual interest accrual, over a period not to exceed 60 months from the Petition Date.

    3.05   Post-Confirmation Tax Claims. All tax claims that are incurred after Confirmation shall be payable when due under applicable non-bankruptcy law.

# ARTICLE IV
## TREATMENT OF CLAIMS, LIENS, AND INTERESTS UNDER THE PLAN

    4.01   Claims and interests shall be treated as follows under the Plan:

| Class No. 2 | *Holder of Claim or Interest:* <br> *PNC Bank, National Association* <br> [ECF Claim No. 3] <br> Related to 1356 Highway 259, Portland, TN 37148 | *Impaired* |
|---|---|---|
| | *Plan Treatment* | |
| The Allowed Secured Claim of PNC Bank, National Association ("PNC") shall be | | |

allowed in the amount owed of **$121,073.59**, less any amounts received by the claimant under any order granting adequate protection thereto, with such amounts being applied to reduce the principal amount of the respective Allowed Secured Claim.

This Claim shall be paid under the Plan as follows:

No installment payments will be made for the period preceding **December 31, 2023**.

This Allowed Secured Claim will be paid in full on before **December 31, 2023** via lump sum payment of the then outstanding principal balance, plus interest and fees to the extent authorized by applicable law.

The Debtor will satisfy the lump sum payment by selling the property located at 1356 Hwy 259, Portland, TN 37148 before conclusion of the Marketing Period.

In the event a sales contract is obtained but a closing has not occurred within the Marketing Period, the Marketing Period shall be extended by up to 60 days to close such sale.

In the event the Marketing Period concludes without the Claim in this class having been satisfied or contractually cured, the Debtor shall immediately hire a reputable auctioneer to sell the subject real property through a promotional auction.

PNC shall retain its lien in the real property supporting its claim under this Plan in the same manner and priority as existed on the Petition Date pending full payment of the Claim as set forth herein. The Debtor shall also retain all required insurance on the collateral securing the Claim.

| Class No. 3 | *Holder of Claim or Interest:* *First Horizon* Related to 1356 Highway 259, Portland, TN 37148 | *Impaired* |
|---|---|---|
| | *Plan Treatment* | |

The Allowed Secured Claim of First Horizon (scheduled as New Horizon), ("First Horizon") shall be allowed in the amount of **$70,000.00**, less any amounts received by the claimant under any order granting adequate protection thereto, with such amounts being applied to reduce the principal amount of the respective Allowed Secured Claim.

This Claim shall be paid under the Plan as follows:

No installment payments will be made for the period preceding **December 31, 2023**.

This Allowed Secured Claims will be paid in full on before **December 31, 2023** via lump sum payment of the then outstanding principal balance, plus interest and fees to the extent authorized by applicable law.

The Debtor will satisfy the lump sum payment by selling the property located at 1356 Hwy 259, Portland, TN 37148 before conclusion of the Marketing Period.

In the event a sales contract is obtained but a closing has not occurred within the Marketing Period, the Marketing Period shall be extended by up to 60 days to close such sale.

In the event the Marketing Period concludes without the Claim in this class having been satisfied or contractually cured, the Debtor shall immediately hire a reputable auctioneer to sell the subject real property through a promotional auction.

First Horizon shall retain its lien in the real property supporting its claim under this Plan in the same manner and priority as existed on the Petition Date pending full payment of the Claim as set forth herein. The Debtor shall also retain all required insurance on the collateral securing the Claim.

| Class No. 4(a) | Holder of Claim or Interest: *Easy Street Capital Investments, LLC; EF Mortgage, LLC; and/or BSI Financial Services* [ECF Claim No. 5] Related to 2098 Highway 76, Portland, TN 37148 | Impaired |
|---|---|---|
| | **Plan Treatment** | |

The Allowed Secured Claim of Easy Street Capital Investments, LLC; EF Mortgage, LLC; and/or BSI Financial Services (collectively, "Easy Street") related to ECF Claim No. 5 secured by real estate located at 2098 Highway 76, Portland, TN 37148 shall be allowed in the amount owed of **$277,363.78**, less any amounts received by the claimant under any order granting adequate protection thereto, with such amounts being applied to reduce the principal amount of the respective Allowed Secured Claim.

This Claim shall be paid under the Plan as follows:

No installment payments will be made for the period preceding **December 31, 2023**.

This Allowed Secured Claim will be paid in full on before **December 31, 2023** via lump sum payment of the then outstanding principal balance, plus interest and fees to the extent authorized by applicable law.

The Debtor will satisfy the lump sum payment by selling the property located at 2098 Highway 76, Portland, TN 37148 before conclusion of the Marketing Period.

In the event a sales contract is obtained but a closing has not occurred within the Marketing Period, the Marketing Period shall be extended by up to 60 days to close such sale.

In the event the Marketing Period concludes without the Claim in this class having been satisfied or contractually cured, the Debtor shall immediately hire a reputable auctioneer to sell the subject real property through a promotional auction.

Easy Street shall retain its lien in the real property supporting its claim under this Plan in the same manner and priority as existed on the Petition Date pending full payment of the Claim as set forth herein. The Debtor shall also retain all required insurance on the collateral securing the Claim.

| Class No. 4(b) | Holder of Claim or Interest: Easy Street Capital Investments, LLC; EF Mortgage, LLC; and/or BSI Financial Services [ECF Claim No. 4] Related to 200 Tranquility Lane, Portland, TN 37148 | Impaired |
|---|---|---|
| | *Plan Treatment* | |

The Allowed Secured Claim of Easy Street Capital Investments, LLC; EF Mortgage, LLC; and/or BSI Financial Services (collectively, "Easy Street") related to ECF Claim No. 4 secured by real estate located at 200 Tranquility Lane, Portland, TN 37148 shall be allowed in the amount owed of **$347,090.46**, less any amounts received by the claimant under any order granting adequate protection thereto, with such amounts being applied to reduce the principal amount of the respective Allowed Secured Claim.

This Claim shall be paid under the Plan as follows:

No installment payments will be made for the period preceding **December 31, 2023**.

This Allowed Secured Claim will be paid in full on before **December 31, 2023** via lump sum payment of the then outstanding principal balance, plus interest and fees to the extent authorized by applicable law.

The Debtor will satisfy the lump sum payment by selling the property located at 200 Tranquility Lane, Portland, TN 37148 before conclusion of the Marketing Period.

In the event a sales contract is obtained but a closing has not occurred within the

Marketing Period, the Marketing Period shall be extended by up to 60 days to close such sale.

In the event the Marketing Period concludes without the Claim in this class having been satisfied or contractually cured, the Debtor shall immediately hire a reputable auctioneer to sell the subject real property through a promotional auction.

Easy Street shall retain its lien in the real property supporting its claim under this Plan in the same manner and priority as existed on the Petition Date pending full payment of the Claim as set forth herein. The Debtor shall also retain all required insurance on the collateral securing the Claim.

| Class No. 5 | Holder of Claim or Interest: Sumner County Trustee [ECF Claim No. 1] | Not Impaired |
|---|---|---|
| | Plan Treatment | |

The Allowed Secured Claims of the Sumner County Trustee shall be allowed in the respective amounts of:

- **$1,244.24** – 2022 property taxes related to 2098 76 Hwy; and
- **$1,313.26** – 2022 property taxes related to 200 Tranquility Lane

These Claims shall be paid under the Plan at the time of closing(s) of sales of the respective properties before conclusion of the Marketing Period.

In the event a sales contract is obtained but a closing has not occurred within the Marketing Period, the Marketing Period shall be extended by up to 60 days to close such sale.

In the event the Marketing Period concludes without the Claim in this class having been satisfied or contractually cured, the Debtor shall immediately hire a reputable auctioneer to sell the subject real property through a promotional auction.

Interest shall continue to accrue on these Claims at the applicable statutory rate of 18% per annum from the Petition Date until satisfaction of the respective Claim.

The Sumner County Trustee shall retain its lien(s) in the real property supporting its claim(s) under this Plan in the same manner and priority as existed on the Petition Date pending full payment of the Claim(s) as set forth herein. The Debtor shall also retain all required insurance on the collateral securing the Claim(s).

| Class No. | Holder of Claim or Interest: | Impaired |
|---|---|---|

| 6 | *William Ira Wood, IV* | |

### Plan Treatment

The Allowed Secured Claims of William Ira Wood, IV ("Wood") shall be allowed in the principal amount of **$116,000.00**, less any amounts received by the claimant under any order granting adequate protection thereto, with such amounts being applied to reduce the principal amount of the respective Allowed Secured Claim.

This Claim shall be paid under the Plan as follows:

No installment payments will be made for the period preceding **December 31, 2023**.

This Allowed Secured Claim will be paid in full on before **December 31, 2023** via lump sum payment of the then outstanding principal balance, plus interest and fees to the extent authorized by applicable law.

The Debtor will satisfy the lump sum payment by selling the property located at 8589 Scottville Road, Franklin, KY 42134 before conclusion of the Marketing Period.

In the event a sales contract is obtained but a closing has not occurred within the Marketing Period, the Marketing Period shall be extended by up to 60 days to close such sale.

In the event the Marketing Period concludes without the Claim in this class having been satisfied or contractually cured, the Debtor shall immediately hire a reputable auctioneer to sell the subject real property through a promotional auction.

Wood shall retain its lien in the real property supporting its claim under this Plan in the same manner and priority as existed on the Petition Date pending full payment of the Claim as set forth herein. The Debtor shall also retain all required insurance on the collateral securing the Claim.

| Class No. 7 | *Holder of Claim or Interest:* *KCC Electric* | Not Impaired |

### Plan Treatment

The Allowed Secured Claim of KCC Electric ("KCC") shall be allowed in the amount of **$7,000.00**.

This Claim is based upon a mechanic's lien recorded in the Sumner County Register of Deeds on July 11, 2022 as Instrument No. 1422105. This Claim shall be paid under the Plan, in full with interest of 7.00% per annum accruing from the Petition Date to the payoff date. The payoff of this Claim shall be made at the

closing of the first sale of real estate sale in Sumner County, Tennessee as provided for in this Plan.

KCC shall retain its lien supporting its claim under this Plan in the same manner and priority as existed on the Petition Date pending full payment of the Claim as set forth herein. Upon satisfaction of this Claim as provided herein, KCC shall record a release of the lien with the Register of Deeds.

| Class No. 8 | *Holder of Claim or Interest:* *Wood Motor Company* *[ECF Claim No. 2]* | *Not Impaired* |
|---|---|---|
| | *Plan Treatment* | |

The Allowed Secured Claim of Wood Motor Company ("WMC") shall be allowed in the amount owed of **$8,708.62**, less any amounts received by the claimant under any order granting adequate protection thereto, with such amounts being applied to reduce the principal amount of the respective Allowed Secured Claim.

This Claim shall be paid under the Plan as follows:

(i)     Thirty-six (36) equal monthly installments of principal and interest shall be made in the amount of **$271.89**.

(ii)     Interest shall accrue at the fixed rate of **7.75%** per annum.

(iii)     The first monthly installment payment will be due on the 15th day of the first month following the Effective Date and subsequent payments will be due on the 15th day of each month thereafter until the secured claim is paid in full. Any pending Adequate Protection Payments will continue to accrue until the Effective Date.

(iv)     Any terms of the existing note and security agreement evidencing this claim which may conflict with the terms of the Plan shall be deemed modified by the terms of this Plan.

WMC shall retain its lien in the collateral supporting this Claim until the final of the above payments; or through acceleration of such payments by the Debtor. Upon receipt of such final payment, WMC shall release its lien on the collateral and remit clear title to the Debtor.

| Class No. 9 | *Holder of Claim or Interest:* *All Allowed Unsecured Claims* | *Impaired* |
|---|---|---|
| | *Plan Treatment* | |

This class shall consist of the allowed unsecured claims not entitled to priority and not expressly included in the definition of any other class. This class includes, without limitation, claims arising out of the rejection of any executory contact or unexpired lease, each allowed claim secured by a lien on property in

which the Debtor has an interest to the extent that such claim is determined to be unsecured pursuant to 11 U.S.C. § 506(a), or unsecured by way of avoidance pursuant to 11 U.S.C. § 522(f), and each such claim of the class described in 11 U.S.C. § 507(a), to the extent that the allowed amount of such claim exceeds the amount which such claim may be afforded priority thereunder.

A pool of **$2,100.00** (the "Unsecured Pool") shall be paid pro-rata to the claimholders in this class. The Unsecured Pool shall be satisfied through one (1) lump-sum payment paid pro-rata to the claimholders in this class on or before **December 31, 2024**.

The Debtor reserves the option to satisfy the Unsecured Pool earlier than as provided above, including by way of sale(s) of any of its assets at its election.

| Class No. 10 | *Holder of Claim or Interest:* *Equity Interests* | Not Impaired |
|---|---|---|
| | *Plan Treatment* | |
| Except as otherwise provided for within this Plan, the Debtor will retain all ownership rights in property of the estate and Eileen Santangelo will retain all ownership interest in the Debtor. | | |

  4.02 <u>Waiver of Secured Status and Lien Rights by Claimants</u>. ***In the event any of the claimants listed or scheduled as secured file a proof of claim stating that no part of the claim is secured, then the claim shall be deemed entirely unsecured and treated as such pursuant to this Plan. Further, in the event a claimant listed or scheduled as secured files a proof of claim asserting that all or part of its claim is unsecured, the filing of such proof of claim shall operate as a lien waiver and this Plan may be recorded with the appropriate County Register of Deeds to evidence the release of such lien.***

  4.03 <u>Proof of Claim Controls Over Amount Scheduled by Debtor</u>. The amount listed on a timely filed proof of claim (subject to allowance of the claim) shall control over any contrary amount listed in the Debtor's schedules and deemed filed pursuant to 11 U.S.C. § 1111(a).

  4.04 <u>Voiding of Liens</u>. Except as otherwise provided under the Plan, Confirmation will void all liens in excess of the Allowed Secured Claims pursuant to § 506(d).

## ARTICLE V
## ALLOWANCE AND DISALLOWANCE OF CLAIMS

  5.01 <u>Objection to Claims</u>. The Debtor or any party in interest may file an objection to any claim in any class on or before the first anniversary of the Effective Date. Objections not filed within such time will be deemed waived. If any claim or

portion thereof is challenged by an objection, the claim shall be treated as a disputed claim.

    5.02   Disputed Claim. A disputed claim is claim that has not been allowed or disallowed by a final non-appealable order, and as to which either: (i) a proof of claim has been filed or deemed filed, and the Debtor, or another party in interest has filed an objection; or (ii) no proof of claim has been filed, and the Debtor has scheduled such claim as disputed, contingent, or unliquidated.

    5.03   Delay of Distribution on Disputed Claims. No distribution will be made on account of a disputed claim unless such claim is allowed by a final non-appealable order. Notwithstanding this delay of distribution on disputed claims, distribution may, in the Debtor's sole discretion, be made on any portion of such disputed claim which is undisputed, pending resolution of the claim allowance as a whole.

    5.04   Settlement of Disputed Claims. The Debtor will have the power and authority to settle and compromise a disputed claim with court approval and compliance with Rule 9019 of the Federal Rules of Bankruptcy Procedure. Following Confirmation and closing of the case, the Debtor shall retain the authority to settle and compromise claims with consent of the settling claimholder, and without the need for Court intervention or approval.

## ARTICLE VI
## EXECUTORY CONTRACTS AND UNEXPIRED LEASES

    6.01   There are no known executory contracts or unexpired leases of the Debtor.

    6.02   Except for executory contracts and unexpired leases that have been assumed, and if applicable assigned, before the Effective Date or under Article 6.01 of this Plan, or that are the subject of a pending motion to assume, and if applicable assign, the Debtor will be conclusively deemed to have rejected all executory contracts and unexpired leases as of the Effective Date. Any non-governmental creditors that believe they hold claims with respect to contracts rejected hereunder shall file a proof of claim on or before the first business day of calendar month following the Effective Date. Any such timely filed allowed claims will participate in the distribution for unsecured creditors set out within the Plan.

## ARTICLE VII
## MEANS FOR IMPLEMENTATION OF THE PLAN

    7.01   The Debtor anticipates that ongoing revenues will satisfy the obligations set forth and established in this Plan. Alternatively, the Debtor reserves

the right to perform the Plan obligations in cash payments derived from the sale of assets, so long as such payments are made on the timelines set forth and established herein. Further, all recoveries (net of collection costs) from Avoidance Actions will be used to fund the Plan.

7.02   If this Plan is confirmed pursuant to 11 U.S.C. § 1191(b), the Debtor anticipates the Trustee to receive Plan Payments and act as the disbursing agent in distributing funds to allowed claims as provided under the Plan. In such event, it is anticipated that the Trustee will receive compensation commensurate with the work performed thereby. For purposes of confirmation, the amount of the Trustee's post-confirmation compensation is estimated to be equivalent to three percent (3%) of the funds received and disbursed by the Trustee after Confirmation. Any Plan Payments made from the Debtor to the Trustee will be through monthly Electronic Funds Transfers (EFTs) or other medium of efficient monetary transactions from the Debtor to the Trustee, as agreed and arranged between them.

## ARTICLE VIII
### GENERAL AND MISCELLANEOUS PROVISIONS

8.01   Definitions and Rules of Construction. The definitions and rules of construction set forth in §§ 101 and 102 of the Code shall apply when terms defined or construed in the Code are used in this Plan, and they are supplemented by the below listed definitions. Therefore, the following terms, when used in this Plan, shall have the following meanings:

a.  "Adequate Protection Payments" shall mean payments made by the Debtor to creditors holding claims secured by property of the Debtor, from the Petition Date to the Effective Date, whether or not such payments were made directly to the creditor or deposited into an account, and whether or not such payments were made pursuant to an order of the Court.

b.  "Avoidance Actions" shall mean any and all causes of action arising under Chapter 5 of the Bankruptcy Code, including without limitation any and all actions to avoid and recover overpayments, preferential transfers, fraudulent transfers, and any and all turnover actions to recover money or property due to the Debtor, regardless of whether they arise prior to or after the Petition Date.

c.  "Code" shall mean the Bankruptcy Reform Act of 1978, as amended, 11 U.S.C. § 101, *et seq.*

d.  "Confirmation" shall mean the entry by the Court of an order confirming the Plan.

e. "Court" shall mean the United States Bankruptcy Court for the Middle District of Tennessee and the Judge assigned to this case.

f. "Debtor" shall mean Serenity Homes of TN, LLC. with the status of, and the rights conferred to, a debtor-in-possession by § 1184 of the Code.

g. "Disposable Income" shall mean all surplus income received by the Debtor after the Debtor's payment of the operating expenses of the Debtor.

h. "Effective Date" shall mean the later of (i) the first business day of the second full month following Confirmation, (ii) the first business day after an appeal of an order confirming this Plan has become final and unappealable, or (iii) **October 1, 2023**. For purposes of the calculations and disbursements proposed within this Plan, an Effective Date of **October 1, 2023,** is presumed. However, the Debtor may at any time designate an earlier Effective Date by filing written notice thereof with the Court and serving such notice on all creditors and parties in interest.

i. "Interests" shall mean the ownership interests held by the Debtor in Property.

j. "Marketing Period" shall mean the period of time from Confirmation through the end of the calendar month that is six (6) months from the Effective Date.

k. "Petition Date" shall mean **March 22, 2023**.

l. "Plan" shall mean this Chapter 11 Plan as the same may be modified from time to time in accordance herewith or pursuant to applicable law.

m. "Plan Payments" shall mean all funds remitted by the Debtor, the Reorganized Debtor, and/or third parties on behalf of the Debtor or Reorganized Debtor to be distributed pursuant to the Plan.

n. "Reorganized Debtor" shall mean the Debtor after Confirmation.

8.02    Severability. If any provision in this Plan is determined to be unenforceable, the determination will in no way limit or affect the enforceability and operative effect of any other provision of this Plan.

8.03    Binding Effect. The rights and obligations of any entity named or referred to in this Plan will be binding upon and will inure to the benefit of the successors or assigns of such entity.

8.04   Captions. The headings contained in this Plan are for convenience of reference only and do not affect the meaning or interpretation of this Plan.

8.05   Controlling Effect. Unless a rule of law or procedure is supplied by federal law (including the Code or the Federal Rules of Bankruptcy Procedure), the laws of the State of Tennessee govern this Plan and any agreements, documents, and instruments executed in connection with this Plan, except as otherwise provided in this Plan.

8.06   Retention of Jurisdiction of the Court. In addition to the continued jurisdiction after plan Confirmation that is provided for as a matter of law by the Code and Bankruptcy Rules, the Court shall retain exclusive jurisdiction for the following:

(a) To determine any and all objections to the allowance, extent, priority or nature of any claims, the amount and proper classification of the claim of any holder and the determination of such objections as may be filed to any claims;

(b) To determine any and all applications for compensation and reimbursement pursuant to §§ 330 or 331 of the Code;

(c) To determine any and all applications for the assumption or rejection of executory contracts and unexpired leases, and the allowance of any claims resulting from rejection thereof;

(d) To determine any and all applications, adversary proceedings and litigated matters that may be filed in this Court;

(e) To interpret, enter final orders relating to, and otherwise act upon or in regard to the terms and provisions of the Plan;

(f) To cause the correction of any defect, the curing of any omission or the reconciliation of any inconsistency in this Plan or the Confirmation order as may be necessary to carry out the purposes and intent of the Plan;

(g) To consider the modification of this Plan after the date of Confirmation as allowed pursuant to the Federal Rules of Bankruptcy Procedure and the Code;

(h) Except as otherwise provided in this Plan, to make any determinations and to issue any final orders to enforce, interpret or effectuate the Plan;

(i) To enter a final order concluding and terminating this case;

(j) To review the reasonableness of any post-Confirmation professional fees paid by the Reorganized Debtor pursuant to Sections 10.02 and 10.04 of this Plan; and

(k) To determine such other matters as may be provided for in the Confirmation order.

8.07 <u>Withdrawal of Plan</u>. At the option of the Debtor, this Plan may be withdrawn at any time prior to Confirmation. Such option shall be exercised by filing with the Court a notice of withdrawal and mailing a copy of such notice to all creditors, equity security holders and persons specially requesting all notices in this case.

8.08 <u>Retention of Claims</u>. Pursuant to § 1123(b)(3)(B) of the Code, the Debtor shall retain each and every claim, demand or cause of action whatsoever which the Debtor may have had power to assert immediately prior to Confirmation, including without limitation, actions for the avoidance and recovery pursuant to § 550 of the Code of transfers avoidable by reason of §§ 544, 545, 547, 548, 549 or 553(b) of the Code.

8.09 <u>Continued Reporting Requirements</u>. Pursuant to Fed. R. Bank. P. 2015, the Debtor is required to file monthly operating reports until Confirmation. After Confirmation, the Debtor is required to file quarterly reports until the case is administratively closed, dismissed, converted to another chapter of the Code, or a final decree is entered by the Court, pursuant to LBR 2015-2.

8.10 <u>Exemptions from Transfer Tax</u>. The issuance, transfer or exchange of a security or the recording of any instrument evidencing the transfer of assets contemplated under the Plan, including the post-Confirmation sale of any property, shall not be taxed under any law imposing a stamp tax or similar tax pursuant to § 1146(a) of the Code.

8.11 <u>Modification of the Plan</u>. The Debtor may propose amendments or modifications of this Plan at any time prior to Confirmation with leave of the Court. After Confirmation, the Debtor, with approval of the Court, and so long as they do not materially or adversely affect the interests of creditors, may remedy any defect or omission, or reconcile any inconsistencies in the Plan or in the order of Confirmation in such a manner as may be necessary to carry out the purposes and effect of this Plan. The foregoing provisions of this paragraph do not limit the ability the Debtor to modify the Plan under § 1193 of the Code and applicable rules.

8.12    Early Payment. Nothing herein shall prohibit the Reorganized Debtor from making an early payment of an allowed claim, provided the funds used to pay that claim will not cause a reduction of the distributions to the unsecured claims in amount. In addition, nothing herein shall be construed as imposing a temporal requirement on the Debtor to wait the proposed length of the Plan to satisfy all Plan Payments, and the Reorganized Debtor shall not be prohibited from making an early payment of the guaranteed amount to Class 4 claims, provided that the Debtor is current on any payments then required to Class 1 through Class 3 claims.

8.13    Preservation of Claims and Causes of Action. The Debtor retains and reserves all causes of action. It is the intent of the Debtor that this reservation of claims shall be as broad as permitted by applicable law and shall include all claims, whether or not disclosed in the Debtor's schedules or this Plan. The Debtor shall have the widest possible latitude in deciding whether or not to pursue any possible cause of action, including without limitation any preference or other avoidance action. Except as expressly provided in the Plan, the Confirmation order shall not bar the Debtor by *res judicata*, collateral estoppel or otherwise from collecting, prosecuting, or defending any matter, avoidance action, or cause of action. Any and all creditors identified in Questions 6 and/or 7 to Debtor's Statement of Financial Affairs in this Chapter 11 case, which includes all creditors receiving payments from the Debtor in the 90 days preceding the Petition Date and insiders receiving payments in the year preceding the Petition Date that aggregated at least $7,525.00, may be the defendant of an Avoidance Action or other cause of action. These identified claims are not intended to be an exhaustive list, and the Debtor may add to or amend the identified claims after Confirmation and reserves their right to do so. Each creditor and party in interest is advised to review closely the Plan and the Debtor's filed Schedules and Statement of Financial Affairs to determine whether any cause of action or Avoidance Action may be pursued against it. Avoidance Actions to recover preferences pursuant to Section 547 of the Code may exist against every person who received a payment from the Debtor within 90 days prior to the Petition Date.

8.14    Default Under Plan. Confirmation shall effect a cure of any existing default under a debt, and notwithstanding the provision of any lease or loan document that may survive the Confirmation, an event of default as to any claim after Confirmation shall exist only if the Debtor (i) fails to make monetary payment when due under the Plan and that default is not cured within twenty (20) days following delivery of written notice of that default, (ii) fails to insure the property securing the creditor's claim for the value of the property, or (iii) disposes of the property securing the claim, normal wear and tear excepted, without either the consent of the creditor holding the claim, the satisfaction of the lien on that property, or the payment of the net proceeds to that creditor.

    <u>8.15</u>   <u>Notice</u>. Unless otherwise directed by the Debtor in writing, notice of default shall be sufficient if delivered as follows:

| | |
|---|---|
| If to the Debtor or Reorganized Debtor:[1] | Serenity Homes of TN, LLC<br>103 Hwy 259<br>Portland, Tennessee 37148 |
|     With copy to: | Gray Waldron<br>DUNHAM HILDEBRAND, PLLC<br>21st Avenue South, Suite 303<br>Nashville, Tennessee 37212<br>gray@dhnashville.com |
| If to the Trustee: | Michael G. Abelow, Trustee<br>SRVH, PLC<br>150 Third Ave. S., Ste 1100<br>Nashville, TN 37201<br>mabelow@srvh.com |

## ARTICLE IX
## EFFECT OF CONFIRMATION, DISCHARGE AND INJUNCTION

    <u>9.01</u>   <u>Vesting of Property</u>. Except as otherwise expressly provided in the Plan, Confirmation of the Plan shall vest all the property of the Debtor's estate in the Debtor.

    <u>9.02</u>   <u>Property Free and Clear</u>. Except as otherwise provided in the Plan, all property shall be free and clear of all claims, liens, and interests of any party as of the Confirmation of the Plan. This Plan will evidence the release of any and all liens or encumbrances against all property, unless such lien or encumbrance is specifically retained in the Plan.

    <u>9.03</u>   <u>Legal Binding Effect</u>. The provisions of this Plan shall bind all claimants, whether or not they accept this Plan or whether or not their claim is impaired.

    <u>9.04</u>   <u>Effect on Third Parties</u>. Nothing contained in the Plan or in the documents to be executed in connection with the Plan shall affect any claimant's rights against any third party, except as otherwise expressly provided in this Plan and except that any creditor or party in interest may only recover from any third-

---

[1] This address for notice is the same that appears on the Petition filed by the Debtor. In the event the Debtor later changes its address, and provides written notice of such change, the Debtor's new address shall be used for creditors providing notice hereunder.

party guarantor or co-obligor the amount owed to it in excess of the amount to be paid on the underlying obligation pursuant to the Plan.

9.05    Release of Claims. The consideration to be distributed under the Plan shall be in exchange for, and in complete satisfaction and release of, all claims against the Debtor or any of its assets or properties, including without limitation any claim accruing after the Petition Date and prior to the Effective Date.

9.06    Permanent Injunction. Except as otherwise expressly provided or permitted under this Plan, upon Confirmation all claimants and persons who have held, hold or may hold claims that existed prior to the Effective Date, are permanently enjoined on and after the Effective Date against: (i) commencement or continuation of any judicial, administrative, or other action or proceeding against the Debtor on account of claims against the Debtor, or on account of claims released pursuant to section 9.05 of the Plan; (ii) enforcement, attachment, collection or recovery by any manner or means of any judgment, award, decree, or order against the Debtor or any property; or (iii) creation, perfection or enforcement of any encumbrance of any kind against the Debtor arising from a claim. This does not enjoin the prosecution of any claims arising on or after the Effective Date nor does it enjoin the determination in the Bankruptcy Court of the amount of any claim that arose prior to the Effective Date. Claimants and parties asserting entitlement to payment of administrative claims incurred prior to the date of Confirmation are permanently enjoined from asserting any Claim against the Debtor or its retained assets based upon any act or omission, transaction or other activity that occurred prior to the Confirmation date, except as otherwise provided in the Plan, whether or not a proof of claim or interest was filed and whether or not such claim or interest is allowed under Section 502 of the Code.

9.07    Exculpation. Except as otherwise provided in the Plan or Confirmation order, the Debtor and the professionals for the Debtor shall neither have nor incur any liability to any entity or person for any act taken or omitted to be taken (exclusive of an act constituting fraud, gross negligence or intentional misconduct) in connection with or related to this Chapter 11 case, including, without limitation, actions related to the formulation, preparation, dissemination, implementation, administration, Confirmation or consummation of the Plan, or any contract, instrument, release or other agreement or document created or entered into in connection with the Plan.

9.08    Discharge [if under § 1191(a)]. If this Plan is confirmed under § 1191(a), on the Effective Date of the Plan, the Debtor will be discharged from any debt that arose before Confirmation of this Plan, to the extent specified in § 1141(d)(1)(A) of the Code. The Debtor will not be discharged from any debt (i) imposed by this Plan; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

9.09   Discharge [if under § 1191(b)]. If the Plan is confirmed under § 1191(b), Confirmation of this Plan does not discharge any debt provided for in this Plan until the Court grants a discharge on the completion of all payments due within the first 3 years of this Plan, or as otherwise provided in § 1192 of the Code. The Debtor will not be discharged from any debt (i) on which the last payment is due after the first 5 years of the Plan, or as otherwise provided in § 1192; or (ii) excepted from discharge under § 523(a) of the Code, except as provided in Rule 4007(c) of the Federal Rules of Bankruptcy Procedure.

## ARTICLE X
## CLOSING OF THE CASE AND CONTINUED EXECUTION OF THE PLAN

10.01   Closing of the Case. After the Effective Date, upon the payment of all outstanding administrative claims and the commencement of payments to priority creditors and secured claimants, the Reorganized Debtor will seek an Order closing the case through the filing of a final accounting and a motion for a final decree as required under Bankruptcy Rule 3022.

10.02   Professional Fees after Confirmation. In the period after Confirmation, but before closing of the case, the Reorganized Debtor may continue to avail itself to the services of professional persons whose employment was approved at or prior to the date of Confirmation in completing administration of the case and in the consummation and performance of the Plan and, if necessary, employ additional professional persons to render services in and in connection with the case. With respect to services rendered and expenses incurred in or in connection with the case by any professional person during such period, the professional person may render periodic billing thereafter to the Reorganized Debtor and the Trustee, who shall promptly pay the same, but each such payment shall be subject to review and approval by the Court as to the reasonableness thereof, as set forth hereinbelow. In any *Motion for Final Decree*, the Reorganized Debtor shall detail all amounts paid during such period to professional persons as compensation for services rendered or reimbursement of expenses incurred, with respect to which no prior application for allowance thereof has been made to the Court. At any hearing upon the Reorganized Debtor's *Motion for Final Decree*, the Court shall consider and determine whether or not such payments shall be approved as reasonable.

10.03   Continued Execution of the Plan after Closing. After closing of the case, the Reorganized Debtor shall remit all Plan Payments to the appropriate holders of allowed claims provided for in the Plan. Upon all payments having been distributed, the Reorganized Debtor shall be authorized to reopen the case, satisfy any additional requirements under the Code and receive a discharge.

10.04 <u>Professional Fees after Closing</u>. After closing of the case, the Reorganized Debtor may continue to avail itself to the services of professional persons whose employment was approved at or prior to closing of the case in performance of the Plan. In the event such professional services are rendered, or expenses are incurred by any professional person therewith, an itemized bill shall be furnished by such professional person to the Reorganized Debtor, who shall promptly pay the same, subject to any objection being raised by the Reorganized Debtor, or the Trustee, in the event the Trustee remains in place to receive and distribute funds under the Plan. Pursuant to Section 8.06(j) of this Plan, the Court will retain jurisdiction to review the reasonableness of each such payment in the event of such an objection or dispute.

[THE REMAINDER OF THIS PAGE IS INTENTIONALLY LEFT BLANK]

Date: June 21, 2023

SERENITY HOMES OF TN, LLC

*/s/Eileen Santangelo*
Eileen Santangelo

By: Eileen Santangelo
Its: Member

Respectfully Submitted,

***/s/ Gray Waldron***
Gray Waldron
DUNHAM HILDEBRAND, PLLC
2416 21st Avenue South, Suite 303
Nashville, TN 37212
629.777.6519
gray@dhnashville.com
*Attorneys for Debtor*

## Table of General Unsecured Claims

| Creditor | Claim Amount |
|---|---|
| Easy Street Capital | $ - |
| Easy Street Capital | $ - |
| PNC Bank | $ - |
| William Ira Wood, IV | $ - |
| New Horizon | $ - |
| Wood Motors | $ - |
| KCC Electric, LLC | $ - |
| Sumner County Trustee | $ - |
| Bobby Ables | $ - |
| Internal Revenue Service | $ - |
| PNC Bank | $ 2,100.00 |
| TOTAL: | $ 2,100.00 |

## Hypothetical Chapter 7 Real Estate Liquidation

*1356 Highway 259, Portland, TN 37148*

| | | |
|---|---|---:|
| *Estimated Chapter 7 Sales Price:* | | **$315,000.00** |
| less 6% realtor | | ($18,900.00) |
| less est. closing costs @ 3% | | ($9,450.00) |
| less Secured Claim | PNC | ($121,073.59) |
| less Secured Claim | First Horizon | ($70,000.00) |
| less Secured Claim | KCC Electric | ($7,000.00) |
| less Secured Claim | | |
| less Secured Claim | | |
| less Secured Claim | | |
| *SUBTOTAL PROCEEDS:* | | **$88,576.41** |
| less Chapter 7 Trustee Fee (25% up to $5,000) | | |
| less Chapter 7 Trustee Fee (10% from $5,000 up to $50,000) | | ($7,678.82) |
| less Chapter 7 Trustee Fee (5% from $50,000 up to $1,000,000) | | |
| Gross Liquidation Proceeds: | | **$80,897.59** |
| less Homestead Exemption | | |
| les Est. Capital Gains Tax | | ?? |
| less Est. Interest accrual on liens before closing | | ($4,558.41) |
| Subtotal: | | **$76,339.18** |

*200 Tranquility Lane, Portland, TN 37148*

| | | |
|---|---|---:|
| *Estimated Chapter 7 Sales Price:* | | **$405,000.00** |
| less 6% realtor | | ($24,300.00) |
| less est. closing costs @ 3% | | ($12,150.00) |
| less Secured Claim | Easy Street | ($347,090.46) |
| less Secured Claim | Sumner County Trustee | ($1,313.26) |
| less Secured Claim | KCC Electric | |
| less Secured Claim | | |
| less Secured Claim | | |
| less Secured Claim | | |
| *SUBTOTAL PROCEEDS:* | | **$20,146.28** |
| less Chapter 7 Trustee Fee (25% up to $5,000) | | ($2,764.63) |
| less Chapter 7 Trustee Fee (10% from $5,000 up to $50,000) | | |
| less Chapter 7 Trustee Fee (5% from $50,000 up to $1,000,000) | | |
| Gross Liquidation Proceeds: | | **$17,381.65** |
| less Homestead Exemption | | |
| les Est. Capital Gains Tax | | ?? |
| less Est. Interest accrual on liens before closing | | ($8,018.06) |
| Subtotal: | | **$9,363.59** |

*2098 Hwy 76, Portland, TN 37148*

| | | |
|---|---|---:|
| *Estimated Chapter 7 Sales Price:* | | **$405,000.00** |
| less 6% realtor | | ($24,300.00) |
| less est. closing costs @ 3% | | ($12,150.00) |
| less Secured Claim | Easy Street | ($277,363.78) |
| less Secured Claim | Sumner County Trustee | ($1,244.24) |
| less Secured Claim | KCC Electric | |
| less Secured Claim | | |
| less Secured Claim | | |
| less Secured Claim | | |
| *SUBTOTAL PROCEEDS:* | | **$89,941.98** |
| less Chapter 7 Trustee Fee (25% up to $5,000) | | ($7,747.10) |
| less Chapter 7 Trustee Fee (10% from $5,000 up to $50,000) | | |
| less Chapter 7 Trustee Fee (5% from $50,000 up to $1,000,000) | | |
| Gross Liquidation Proceeds: | | **$82,194.88** |
| less Homestead Exemption | | |
| les Est. Capital Gains Tax | ?? | |
| less Est. Interest accrual on liens before closing | | ($6,411.80) |
| Subtotal: | | **$75,783.08** |

*8589 Scottsville Road, Franklin, KY 42134*

| | | |
|---|---|---:|
| *Estimated Chapter 7 Sales Price:* | | **$143,100.00** |
| less 6% realtor | | ($8,586.00) |
| less est. closing costs @ 3% | | ($4,293.00) |
| less Secured Claim | Wood | ($116,000.00) |
| less Secured Claim | | |
| less Secured Claim | | |
| less Secured Claim | | |
| less Secured Claim | | |
| less Secured Claim | | |
| *SUBTOTAL PROCEEDS:* | | **$14,221.00** |
| less Chapter 7 Trustee Fee (25% up to $5,000) | | ($2,172.10) |
| less Chapter 7 Trustee Fee (10% from $5,000 up to $50,000) | | |
| less Chapter 7 Trustee Fee (5% from $50,000 up to $1,000,000) | | |
| Gross Liquidation Proceeds: | | **$12,048.90** |
| less Homestead Exemption | | |
| les Est. Capital Gains Tax | ?? | |
| less Est. Interest accrual on liens before closing | | ($3,813.70) |
| Subtotal: | | **$8,235.20** |

| | |
|---:|---:|
| **Combined Real Estate Total:** | **$169,721.06** |

*Less capital gains taxes*

| Plan Exhibit A.2 | | | | |
|---|---|---|---|---|
| **Personal Property Liquidation Analysis** | | | | |
| **Asset** | **Amount** | **Lien(s)** | **Exemption** | **Net** |
| 2012 Chevrolet Silverado | $9,000.00 | ($9,000.00) | | - |
| | | | | - |
| **Subtotals** | **$9,000.00** | **($9,000.00)** | **$0.00** | **$0.00** |
| **$0.00** | Subtotal of positive net proceeds before auction costs | | | |
| **$0.00** | Auctioneer Costs and Fees (15%) | | | |
| **$0.00** | Subtotal of positive net proceeds before Trustee commissions | | | |
| | *less Chapter 7 Trustee Fee (25% up to $5,000)* | | | |
| $0.00 | *less Chapter 7 Trustee Fee (10% from $5,000 up to $50,000)* | | | |
| | *less Chapter 7 Trustee Fee (5% from $50,000 up to $1,000,000)* | | | |
| **$0.00** | ***Amount available for unsecured creditors in Chapter 7*** | | | |